**IN THE COURT OF APPEALS OF IOWA**

No. 20-0402
Filed July 1, 2020

**IN THE INTEREST OF K.P.,**
**Minor Child,**

**B.S., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

        The father appeals the modification of a child-in-need-of-assistance dispositional modification order removing the child from his custody. **AFFIRMED**.

        Danielle M. Ellingson of Eggert, Erb & Ellingson, P.L.C., Charles City, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

        Elizabeth A. Batey of Vickers Law Office, Greene, for appellee mother.

        Cynthia Schuknecht, Charles City, attorney and guardian ad litem for minor child.

        Considered by Bower, C.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

K.P. is two years old. This child-in-need-of-assistance (CINA) proceeding has been pending for just a little more than one year, and this is the third appeal in the case.[1]

Both parents have substance-abuse problems. In the latter part of 2019, the parents were equally sharing custody and time with the child. Due to concerns of continued drug use by the mother coupled with reported progress by the father, the juvenile court removed the child from the mother's custody and placed the child in the sole custody of the father on January 4, 2020.

Adamant that she was not using drugs and the father (or someone the father let care for the child) was, the mother demanded drug testing of everyone involved, including the mother, the father, K.P., and K.P.'s seven older half-siblings.[2] Testing was conducted on January 10, 2020. A hearing to review the order removing the children from the mother's custody was held on January 16, 2020. At the time of the hearing, the results of the drug tests were not available. Following the contested removal review hearing, the removal of the child from the mother's care was confirmed and the child was placed in the sole custody of the father.[3]

---

[1] Additional factual background can be found in the decisions resolving the prior appeals. *See In re K.P.*, No. 20-0220, 2020 WL 1881122 (Iowa Ct. App. Apr. 15, 2020) (mother challenging removal); *In re K.P.*, No. 19-0470, 2019 WL 2524137 (Iowa Ct. App. June 19, 2019) (both parents challenging removal).

[2] The mother has eight children. K.P. is her youngest, and K.P.'s father is a different man than the father of the other seven children. The mother's oldest seven children have the same father, who is now deceased. K.P.'s seven half-siblings are not involved in this appeal.

[3] The mother appealed the removal order, generating *K.P.*, No. 20-0220, 2020 WL 1881122.

Shortly after the removal hearing, the drug test results came back. The mother and father tested negative, as did the five half-siblings of K.P. who were tested.[4] However, K.P. tested positive for methamphetamine. This prompted the mother to file a motion to modify the CINA dispositional order to remove the child from the father's custody as well. Following a hearing, the juvenile court did just that. The father appeals.

"We review CINA proceedings de novo." *In re J.S.,* 846 N.W.2d 36, 40 (Iowa 2014). And "[w]hile we are not bound by the juvenile court's factual findings, we accord them weight." *In re L.H.,* 904 N.W.2d 145, 149 (Iowa 2017). One basis for transferring custody of a child to a party other than a parent, guardian, or custodian is when there is clear and convincing evidence the child cannot be protected from some harm that would justify the adjudication of the child as a child in need of assistance. Iowa Code § 232.102(4)(a)(2) (2020). Evidence is clear and convincing "when there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *L.H.,* 904 N.W.2d at 149 (alteration in original) (quoting *In re D.W.,* 791 N.W.2d 703, 706 (Iowa 2010)).

The father argues there is not clear and convincing evidence that removal was necessary to protect the child from some harm that would justify adjudication of the child as a child in need of assistance and there was no showing K.P. was in any danger. We strongly disagree. K.P. testing positive for methamphetamine would justify adjudication to protect her and shows she is in danger. *See* Iowa

---

[4] The oldest two of K.P.'s half-siblings were not able to be tested at that time.

Code § 232.2(6)(o) (stating the term "[c]hild in need of assistance" includes a child "[i]n whose body there is an illegal drug present as a direct and foreseeable consequence of the acts or omissions of the child's parent, guardian, or custodian"); s*ee also In re L.H.*, No. 19-0931, 2019 WL 5063336, at *5 (Iowa Ct. App. Oct. 9, 2019) ("The existence of illegal substances in a child's body is an adjudicatory harm to the child.").

The father impliedly claims he is not responsible for the positive test because neither the State nor the Iowa Department of Human Services (DHS) requested removal of the child from his care, and he points to his purported progress to challenge removal. We do not find the father's arguments persuasive. There is no doubt the child is in harm's way since the child tested positive for methamphetamine. As noted by the juvenile court:

> [K.P.] has tested posit[i]ve for methamphetamine. While both parents have since tested negative, there is video of mother snorting some type of drug. Father continues to drink. He has at least once left [K.P.] in the care of his parents. Her safety with either parent cannot be assured.

Definitive proof of responsibility for the child's positive drug test is not required for removal from the father based on the circumstances of this case. Those circumstances include the fact that, at the relevant times when the child would have been exposed to methamphetamine, the father had the child in his custody on either a half-time basis (before January 4 when the father and mother split time with the child) or full-time basis (starting on January 4 when the child was removed from the mother's care and placed full-time with the father). The father has failed to fully address his substance-abuse issues and continues to drink alcohol or at least attend parties where alcohol is prevalent, including during times he is to be

caring for K.P., even though he has been repeatedly warned his alcohol use is an impediment to him having the child in his care. The father has also been dishonest about his alcohol and other drug usage and dishonest as to whom he lets care for the child when the father is responsible for her care. On at least one occasion, he has left the child with his family members involved with drug use. All of these behaviors exposed the child to safety risks and collectively warrant removal of the child from the father's care at the present time.

At the hearing on modification, although the mother stated she would like to have K.P. placed in her care, she acknowledged she was not claiming custody should be placed with her. Instead, she sought removal from the father's care as well. We acknowledge the mother's concession and agree with the following observations by the juvenile court:

> [K.P.]'s two years old and she tested positive for meth, which is absolutely and utterly unacceptable. Because of the time from the testing, because of the split of custody, I have absolutely no idea when or where that occurred. It would appear that, obviously, it's not use that's occurring from her older siblings. I, obviously, given the history of the case, have reason to question the veracity of drug testing of the adults.
>
> I think I have been incredibly clear about [K.P.] not having any contact with paternal grandparents since they've refused a drug test and there's a[n] articulated concern about meth use. I have at least one police report that indicates that she was there in their care in October, which is absolutely ludicrous.
>
> [Father], we have repeatedly discussed with you [the] fact that you should not be drinking. It's the same discussion I've had with [the mother] when she was out drinking when the kids weren't in her care, when they were at home. You guys have substance issues that are completely unresolved. And your two-year-old tested positive for meth. That can't happen.
>
> I don't exactly know all these parties and all that stuff, and the timing and all of that. But I'm at a point where, I mean, I have to, first and foremost, make sure that this child is safe. I can't assure that in either one of your homes right now; and so I'm going to enter an

order that puts her temporary custody with the Department for placement in family foster care.

I recognize that [the DHS social worker] is telling me that there aren't any concerns with your parenting, [Father]. I don't know how that's possible. Same way I don't know how it's possible that we can say that about [the mother] either.

I know both of you love this child. That is not the question. I know that there are times where you can provide appropriate care for her, but it's not a full-time thing, and she is at risk. I mean, we've got to get a handle on this thing. So that's going to be my order. The service recommendations are appropriate. However, [Father] and [Mother], we're going to need to have some consistent testing—[DHS Social Worker], I'm not sure which the best method is—not just for controlled substances but also alcohol to make sure that both of you are clean and sober at all times, whether this child's in your care or not, so we can address this.

Based on our de novo review, we agree clear and convincing evidence supports finding the child cannot be protected from adjudicatory harm unless removed from the father's custody. *See* Iowa Code § 232.102(4)(a)(2). Therefore, we affirm the juvenile court decision to modify the CINA dispositional order to remove the child from the custody of the father and to place the custody of the child with the DHS since the child cannot be returned to the mother either.

**AFFIRMED**.